**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**STEPHEN ANTHONY GONZALES,**

     **Plaintiff,**

     **v.**                    **CASE NO.  19-3099-SAC**

**LEIGH HOOD, et al.,**

     **Defendants.**

**MEMORANDUM AND ORDER
AND ORDER TO SHOW CAUSE**

     Plaintiff Stephen Anthony Gonzales is hereby required to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.  Plaintiff is also given the opportunity to file a proper amended complaint.

**I.  Nature of the Matter before the Court**

     Plaintiff filed this *pro se* civil rights case under 42 U.S.C. § 1983.  The Court granted Plaintiff leave to proceed *in forma pauperis*.  On January 14, 2020, the Court entered an Order (Doc. 11) granting Plaintiff until February 14, 2020, to file an amended complaint.  The Order provides that "[i]f Plaintiff fails to submit an amended complaint by the deadline, the Court will screen Plaintiff's current Complaint at Doc. 1."  (Doc. 11, at 2.)  Plaintiff has failed to submit an amended complaint by the deadline.  Therefore, this matter is before the Court for screening Plaintiff's Complaint at Doc. 1.

     Plaintiff alleges that he was held on an illegal sentence and it was not corrected for twenty-five months.  Plaintiff's amended motion to correct the illegal sentence was granted on December 17, 2017. Plaintiff alleges that prison officials should have known the sentence was

illegal because he filed a grievance on June 6, 2016, and the state court officials should have known because he filed his original motion to correct illegal sentence on July 6, 2016. Plaintiff alleges that his original motion was "lost in the shuffle" for nineteen months. Plaintiff alleges that he was in KODC custody or supervision for twenty-five months before the sentence was corrected. Plaintiff received a letter from his attorney on December 27, 2017, stating that his amended motion to correct illegal sentence had been granted. The ruling abolished Plaintiff's post-release supervision for his criminal Case No. 13CR56. Plaintiff alleges that he completed this post-release supervision "day for day."

Plaintiff alleges that he would not have received his second KORA violation (Case No. 16CR557) if his motion to correct illegal sentence would have been timely addressed, because the violation happened while he was on supervised release for his illegal sentence. Plaintiff alleges that this violation affected his criminal history in Case No. 19CR189.

Plaintiff names as defendants: state court judges; state prosecutors; public defenders; Roger Werholtz, Secretary of Corrections; Denise Parker, Ford County District Court; A.S., Sentence Computation at KDOC; LCMHF Warden; LCMHF Unit Team Manager; Sally Rose, LCMHF CCII Unit Team; and the Clerk of the Court for the Ford County District Court.

Plaintiff's request for relief seeks injunctive relief regarding his criminal history in Case No. 19CR189 pending before the Sedgwick County District Court. Plaintiff also seeks compensatory and punitive damages.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised

claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson,* 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the

plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### A. Improper Defendants

#### 1. Eleventh Amendment Immunity

Plaintiff sues all defendants in their individual and official capacities. An official-capacity suit is another way of pleading an action against the governmental entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "When a suit alleges a claim against a state official in his official capacity, the real party in interest in the case is the state, and the state may

raise the defense of sovereign immunity under the Eleventh Amendment." *Callahan v. Poppell*, 471 F.3d 1155, 1158 (10th Cir. 2006) (quotation omitted).  Sovereign immunity generally bars actions in federal court for damages against state officials acting in their official capacities. *Harris v. Owens*, 264 F.3d 1282, 1289 (10th Cir. 2001).  It is well established that Congress did not abrogate the states' sovereign immunity when it enacted § 1983.  *Quern v. Jordan*, 440 U.S. 332, 338–45 (1979); *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

The bar also applies when the entity is an arm or instrumentality of a state.  *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000).  In determining whether an entity is an instrumentality or arm of the state for purposes of Eleventh Amendment immunity, the Tenth Circuit has established a two-part inquiry, requiring an examination of:  (1) "the degree of autonomy given to the agency, as determined by the characterization of the agency by state law and the extent of guidance and control exercised by the state," and (2) "the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing."  *Duke v. Grady Mun. Sch.*, 127 F.3d 972, 974 (10th Cir. 1997) (citations omitted). "The governmental entity is immune from suit if the money judgment sought is to be satisfied out of the state treasury."  *Id.* (citations omitted).

Kansas state law clearly characterizes the district courts as arms of the state government—part of a unified judicial branch along with the Kansas Supreme Court and Kansas Court of Appeals.  *Wilkins v. Skiles*, No. 02–3190, 2005 WL 627962, at *4 (D. Kan. March 4, 2005); *see generally*, KAN. CONST. art 3.  The legislature defines "state agency," for purposes of the state workers' compensation fund, as "the state, or any department or agency of the state, but not including . . . the district court with regard to district court officers or employees whose total salary is payable by counties."  K.S.A. 44–575(a).  The only court personnel who are not

included in the judicial personnel pay system, and are instead paid by the county, are county auditors, coroners, court trustees and personnel in each trustee's office, and personnel performing services in adult or juvenile detention or correctional facilities. K.S.A. 20–162(a), (b).

District court judges are state officials. *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1256 (D. Kan. 2004), *see also Sigg v. Dist. Court of Allen Cty., Kan.*, No. 11-2625-JTM, 2012 WL 941144, at *4 (D. Kan. March 20, 2012) (district court judge is a state official and official capacity claims against judge for money damages are barred). A county district attorney's office, "to the extent that it is an entity that can be sued, is a branch or agency of the state under applicable law and, therefore, is also immune under the Eleventh Amendment." *Collins v. McClain*, 207 F. Supp. 2d 1260, 1263 (D. Kan. 2002) (citations omitted); *see also White v. Blackwell*, 343 F. App'x 341, 342 (10th Cir. 2009) (damage claim against county prosecutor in her official capacity barred by Eleventh Amendment immunity); *McCormick v. Bd. of Cty. Comm'rs of Shawnee Cty.*, 24 P.3d 739, 746 (Kan. Ct. App. 2001) ("In Kansas, district attorneys are officers of the State.").

The official capacity claims against the state officials for monetary damages are barred by sovereign immunity. Furthermore, state officers acting in their official capacity are not considered "persons" against whom a claim for damages can be brought under § 1983. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).

### 2. Personal Immunity

#### a. Prosecutors

Plaintiff names county prosecutors as defendants. Plaintiff's claims against the county prosecutors fail on the ground of prosecutorial immunity. Prosecutors are absolutely immune

from liability for damages in actions asserted against them for actions taken "in initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Plaintiff's claims concerning his criminal case fall squarely within the prosecutorial function. Plaintiff is directed to show cause why his claims against the county prosecutors should not be dismissed based on prosecutorial immunity.

### b. Judge

Plaintiff names a state court judge as a defendant.  State court judges are entitled to personal immunity.  "Personal immunities . . . are immunities derived from common law which attach to certain governmental officials in order that they not be inhibited from 'proper performance of their duties.'"  *Russ v. Uppah*, 972 F.2d 300, 302–03 (10th Cir. 1992) (citing *Forrester v. White*, 484 U.S. 219, 223, 225 (1988)).

Plaintiff's claims against the state court judge should be dismissed on the basis of judicial immunity.  A state judge is absolutely immune from § 1983 liability except when the judge acts "in the clear absence of all jurisdiction."  *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (articulating broad immunity rule that a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority . . . ."); *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994).  Only actions taken outside a judge's judicial capacity will deprive the judge of judicial immunity.  *Stump*, 435 U.S. at 356–57.  Plaintiff alleges no facts whatsoever to suggest that the defendant judge acted outside of his judicial capacity.

### c. Court Services Officer

Plaintiff names CSO Denise Parker as a defendant.  Plaintiff alleges that Defendant Parker, a Court Services Officer, prepared Plaintiff's Presentence Investigation for Case

No. 13CR56.  When the challenged activities of a probation officer are intimately associated with the judicial phase of the criminal process, they are entitled to absolute immunity.  *Tripati v. U.S.I.N.S.*, 784 F.2d 345, 348 (10th Cir. 1986) (finding that probation officers who assist in the decision whether to order pretrial release and in the selection of an appropriate sentence are an important part of the judicial process and entitled to immunity).  When preparing a presentence report "it is evident . . . that the probation service is an arm of the court.  It is not an investigative arm for the prosecution.  A presentence report is prepared exclusively at the discretion of and for the benefit of the court."  *Id.* (citing *United States v. Dingle*, 546 F.2d 1378, 1380–81 (10th Cir. 1976)).  Plaintiff has not alleged that Defendant Parker was acting other than as an arm of the court.  Plaintiff is directed to show cause why his claims against Defendant Parker should not be dismissed.

### d.  Defense Counsel

Plaintiff has not shown that his state court defense attorneys were acting under color of state law as required under § 1983.  *See Polk Cty. v. Dodson*, 454 U.S. 312, 318–19, 321–23 (1981) (assigned public defender is ordinarily not considered a state actor because their conduct as legal advocates is controlled by professional standards independent of the administrative direction of a supervisor); *see also Vermont v. Brillon*, 556 U.S. 81, 91 (2009); *Dunn v. Harper County*, 520 Fed. Appx. 723, 725-26, 2013 WL 1363797 at *2 (10th Cir. Apr. 5, 2013) ("[I]t is well established that neither private attorneys nor public defenders act under color of state law for purposes of § 1983 when performing traditional functions as counsel to a criminal defendant." (citations omitted)).  A criminal defense attorney does not act under color of state even when the representation was inadequate. *Briscoe v. LaHue*, 460 U.S. 325, 330 n.6 (1983).  Plaintiff's claims against his defense attorneys are subject to dismissal for failure to state a claim.

### e. KDOC Staff

If Plaintiff is relying on the participation by these defendants in his confinement, he must allege a "misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Callaway v. Werholtz*, No. 12-2527-EFM, 2013 WL 2297139, at *3 (D. Kan. May 24, 2013) (defining "acting under color of state law" as required by § 1983). Plaintiff has not alleged a misuse of power by these defendants. Furthermore, "[o]fficials who act pursuant to a 'facially valid court order' enjoy quasi-judicial immunity from suit under § 1983." *Callaway*, 2013 WL 2297139, at *4 (citing *Turney v. O'Toole*, 898 F.2d 1470, 1472 (10th Cir. 1990) (holding that state officials were absolutely immune from § 1983 liability for confining the plaintiff in a state hospital pursuant to a judicial order)). Plaintiff alleges that his amended motion to correct illegal sentence was granted by the court on December 17, 2017, and that he received an Inmate Date Summary on January 31, 2018, stating "Rec'd JE Abolishing P.R. in 13CR56." Plaintiff does not allege that these defendants failed to follow court orders.

## B. Illegal Sentence

Plaintiff's claim focuses on the delay in correcting his illegal sentence. The correction to Plaintiff's sentence involved the post-release supervision portion of one of his sentences. However, it is not clear that Plaintiff actually spent time in custody that he would not have otherwise been required to serve. Plaintiff has not alleged that he would not have received his second KORA violation (Case No. 16CR557) if he were not on post release supervision. Plaintiff is currently incarcerated and it is unclear whether Plaintiff received credit for any time that he allegedly overserved. *See Ewell v. Toney*, 853 F.3d 911, 917 (7th Cir. 2017). "[A] section 1983 plaintiff may not receive damages for time spent in custody, if that time was

credited to a valid and lawful sentence." *Id.* (citations omitted).  If Plaintiff is not entitled to seek damages related to his detention, then there is no injury that a favorable decision by a federal court may redress.  *See id.* at 918 (where judge ultimately found probable cause and denied bail, plaintiff would not have been entitled to release any sooner, and because her time in custody was later credited to a criminal sentence on another charge, plaintiff could not receive damages for time spent in custody after her arrest).

## C.  Request for Relief

Plaintiff seeks injunctive relief regarding his criminal history in Sedgwick County District Court Case No. 19CR189.   Plaintiff seeks to prevent his conviction in Case No. 16CR557 from being used in determining his criminal history in Case No. 19CR189. Plaintiff also seeks compensatory and punitive damages.

### 1.  Heck Bar and Habeas Nature of Claim

An online Kansas District Court Records Search shows that Plaintiff pled guilty in Case No. 19CR189 on March 7, 2019, and was sentenced on June 11, 2019.  *See State v. Gonzales*, Case No. 19CR189, filed January 23, 2019 (Sedgwick County District Court).  This Court cannot order State courts to open or close cases.  *See Presley v. Presley*, 102 F. App'x 636, 636–37 (10th Cir. 2004) (holding that any federal court order for "investigation or prosecution of various people for various crimes" would "improperly intrude upon the separation of powers"); *Alexander v. Lucas*, 259 F. App'x 145, 148 (10th Cir. 2007) (holding that the *Rooker-Feldman* doctrine barred plaintiff's request that the federal district court order a State-court judge to grant relief).

To the extent Plaintiff challenges the validity of his sentence in his state criminal Case No. 16CR557 (his second KORA violation)[1] or Case No. 19CR189, his federal claim must be presented in habeas corpus.  "[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, *but not to the fact or length of his custody.*"  *Preiser v. Rodriguez,* 411 U.S. 475, 499 (1973) (emphasis added).  When the legality of a confinement is challenged so that the remedy would be release or a speedier release, the case must be filed as a habeas corpus proceeding rather than under 42 U.S.C. § 1983, and the plaintiff must comply with the exhaustion of state court remedies requirement.  *Heck,* 512 U.S. at 482; *see also Montez v. McKinna,* 208 F.3d 862, 866 (10th Cir. 2000) (exhaustion of state court remedies is required by prisoner seeking habeas corpus relief); *see* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of available state court remedies).  "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982);  Therefore, any claims challenging his state sentences are not cognizable in a § 1983 action.

Likewise, before Plaintiff may proceed in a federal civil action for monetary damages based upon an invalid conviction or sentence, he must show that his conviction or sentence has been overturned, reversed, or otherwise called into question.  *Heck v. Humphrey*, 512 U.S. 477 (1994).  If Plaintiff has been convicted and a judgment on Plaintiff's claim in this case would necessarily imply the invalidity of that conviction, the claim may be barred by *Heck*.  In *Heck v.*

---

[1]  An online Kansas District Court Records Search shows that Plaintiff pled guilty in Case No. 16CR557 and was sentenced on May 5, 2017.  *See State v. Gonzales*, Case No. 16CR557, filed December 19, 2016 (Ford County District Court).

*Humphrey*, the United States Supreme Court held that when a state prisoner seeks damages in a § 1983 action, the district court must consider the following:

> whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck v. Humphrey*, 512 U.S. 477, 487 (1994).  In *Heck*, the Supreme Court held that a § 1983 damages claim that necessarily implicates the validity of the plaintiff's conviction or sentence is not cognizable unless and until the conviction or sentence is overturned, either on appeal, in a collateral proceeding, or by executive order.  *Id.* at 486–87.  Plaintiff has not alleged that his convictions or sentences in Case Nos. 16CR557 and 19CR189 have been invalidated. Therefore, Plaintiff must show cause why his Complaint should not be dismissed as barred by *Heck*.

### 2. Punitive Damages

Plaintiffs also seeks punitive damages, which "are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'"  *Searles*, 251 F.3d at 879 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).   Plaintiff presents no plausible basis for a claim of punitive damages because he alleges no facts whatsoever establishing that any defendant acted with a sufficiently culpable state of mind.   Plaintiff's request for punitive damages is subject to dismissal.

### IV. Response and/or Amended Complaint Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein.  Plaintiff is also given the opportunity to file a complete and proper

amended complaint upon court-approved forms that cures all the deficiencies discussed herein.[2] Plaintiff is given time to file a complete and proper amended complaint in which he (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint and may be dismissed without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED THAT** Plaintiff is granted until **May 8, 2020,** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **May 8, 2020**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated April 16, 2020, in Topeka, Kansas.**

**s/ Sam A. Crow**
**Sam A. Crow**
**U.S. Senior District Judge**

---

[2] To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint. Plaintiff must write the number of this case (19-3099-SAC) at the top of the first page of his amended complaint and he must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation.